**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 05-1804**

———————————

ARNOLD WHITE; DELBERT GASKINS,

                                        Plaintiffs - Appellees,

        versus

BFI WASTE SERVICES, LLC,

                                        Defendant - Appellant.

------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                                        Amicus Supporting Appellees.

———————————

**No. 05-1837**

———————————

ARNOLD WHITE; DELBERT GASKINS,

                                        Plaintiffs - Appellants,

        versus

BFI WASTE SERVICES, LLC,

                                        Defendant - Appellee.

------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                                        Amicus Supporting Appellants.

Appeals from the United States District Court for the Eastern District of Virginia at Alexandria.  Gerald Bruce Lee, District Judge.  (CA-02-1833-1; CA-02-1832-1)

Argued:  March 17, 2006                    Decided:  May 23, 2006

Before NIEMEYER, LUTTIG,[*] and KING, Circuit Judges.

Affirmed in part, reversed in part, and remanded with instructions by unpublished per curiam opinion.

**ARGUED:**  Ronald Alan Lindsay, SEYFARTH SHAW, L.L.P., Washington, D.C., for Appellant/Cross-Appellee.  Christopher Edwin Brown, Alexandria, Virginia, for Appellees/Cross-Appellants.  Barbara L. Sloan, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Supporting Appellees/Cross-Appellants.  **ON BRIEF:** Christina S. Pignatelli, SEYFARTH SHAW, L.L.P., Washington, D.C., for Appellant/Cross-Appellee.  James L. Lee, Deputy General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Supporting Appellees/Cross-Appellants.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

[*]Judge Luttig heard oral argument in this case but resigned from the court prior to the time the decision was filed.  The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

PER CURIAM:

Arnold White and Delbert Gaskins commenced this action against BFI Waste Services, LLC ("BFI"), their employer, alleging discrimination because of race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. In a prior appeal, we reversed a portion of the district court's decision granting summary judgment to BFI, remanding the case for trial on the plaintiffs' claim of a hostile work environment. See White v. BFI Waste Services, LLC, 375 F.3d 288 (4th Cir. 2004). On the plaintiffs' hostile work environment claim, a jury has now returned a verdict in favor of the plaintiffs, awarding each plaintiff $600,000 in compensatory damages and $2 million in punitive damages. The district court reduced the compensatory damages awards by one half because they represented double damages and remitted the $2 million punitive damages awards to $600,000 on the ground that they were excessive.

On appeal, BFI has assigned a broad array of errors with respect to all phases of the trial proceedings. In general, BFI contends that the jury selection process was flawed; that the evidence was insufficient to support the jury's verdict both as to liability and as to punitive damages; that the district court improperly instructed the jury; that the jury's awards of compensatory and punitive damages were excessive; and that the district court improperly disposed of post-trial motions.

We agree that the evidence was insufficient to award punitive damages and reverse that part of the judgment. Otherwise, we affirm.

I

White and Gaskins, who are black, were employed by BFI as garbage truck drivers, working at BFI's facility in Merrifield, Virginia. White had worked at that facility since 1989 and Gaskins since 1996. In 2002 the two employees commenced this action, complaining that BFI's managers discriminated against them by creating a racially hostile work environment over the years that they worked at the Merrifield facility. The plaintiffs alleged that BFI's managers constantly slurred and insulted them racially by calling them -- as well as other black drivers -- "nigger," "boy," "Zulu warrior," and "porch monkey," among others. At trial, White and Gaskins described how the managers meticulously avoided speaking their racial epithets in the open or over the company's radio, but rather verbally accosted the black drivers in face-to-face encounters or by muttering under their breath. White described one incident, however, where a manager openly spoke a racial slur at a company picnic. When White and his family exited from an expensive car, the manager said to him, "Boy, you make too much money."

The evidence at trial showed that the plaintiffs received BFI's employee handbook, which contained procedures to follow in

-4-

response to such discrimination. The handbook directed that employees contact managers in case of discrimination, and it provided a telephone number that employees could call anonymously to lodge complaints. The evidence showed that the plaintiffs did not complain often through that process; indeed, they testified that they never complained about the vast majority of the epithets they suffered. Moreover, BFI offered testimony that when it did receive such a complaint, it reprimanded the manager involved and had him apologize to the employee. But there was also evidence that both plaintiffs complained regularly to a shop steward who collected employee complaints and relayed them to BFI managers. The shop steward testified that BFI never responded to these complaints and that hostile conditions continued in the workplace.

Both White and Gaskins testified that they suffered over the many years that they were harassed by BFI's managers and that their personalities changed during the period. They related how their families in turn suffered. White testified that he had gone to see a doctor but provided no further details.

The jury returned a general verdict for both White and Gaskins, awarding each $600,000 in compensatory damages and $2 million in punitive damages. The district court reduced each compensatory damages award, cutting it in half, on the ground that it was a double recovery for the same injury -- one under Title VII and the other under § 1981. As to the punitive damages, the

court remitted the award to $600,000 per plaintiff, which the plaintiffs accepted in lieu of a new trial on damages.

From the judgment entered, BFI filed this appeal, alleging multiple errors, and the plaintiffs cross-appealed, challenging the district court's reduction in damages.

We have examined the briefs of the parties, considered their oral arguments, and reviewed the record, and reject all appeals except that relating to the award of punitive damages. Accordingly, we reverse the award of punitive damages and in all other respects affirm. While we do not address further all of the points raised by the parties, we believe that a few merit further discussion.

II

With respect to the sufficiency of the evidence on liability, BFI alleges that it had a complete defense because it had in place an effective antiharassment policy, and when it was made aware of complaints, it responded to its employees in accordance with that policy. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998). While the existence of a policy is necessary to provide defendants with an affirmative defense, it is not sufficient, and that defense is lost if the policy was ineffective. See Matvia v. Bald Head Island Management, Inc., 259 F.3d 261, 268 (4th Cir. 2001); Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 266 (4th Cir. 2001).

In this case there was sufficient evidence on which the jury could have relied to find that BFI's policy was ineffective. Although BFI directed our attention to some testimony, including that of White, which affirmed BFI's responsiveness to complaints, the Merrifield shop steward testified, without contradiction, that BFI never addressed the numerous complaints about racial harassment that he presented to management. The jury reasonably could have believed the shop steward's testimony and consequently could have determined that BFI's antiharassment policy was ineffective. Moreover, there was also evidence that, despite BFI's responsiveness, the hostile environment continued to exist at the Merrifield facility during the entire time that the plaintiffs worked there, which, for White, was over 10 years, and for Gaskins, about 6 years.

III

With respect to BFI's contention that the evidence was insufficient to support an award of punitive damages, we agree.

To justify an award of punitive damages, a plaintiff alleging discrimination must demonstrate that his employer acted "with malice or with reckless indifference to [his] federally protected rights." Kolstad v. American Dental Association, 527 U.S. 526, 535 (1999) (quoting 42 U.S.C. § 1981a(b)(1) (emphases omitted)). Moreover, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where

these decisions are contrary to the employer's good-faith efforts to comply with Title VII." Id. at 545 (internal quotation marks and citation omitted). We have held that distributing an antiharassment policy and conducting training seminars "preclude the award of punitive damages." Bryant v. Aiken Regional Medical Centers, Inc., 333 F.3d 536, 549 (4th Cir. 2003).

In this case, BFI demonstrated that it had distributed an antiharassment policy and that it had conducted training seminars. To overcome this evidence of good-faith efforts to comply with Title VII and § 1981, the plaintiffs pointed only to the ineffectiveness of BFI's antiharassment policy. While the ineffectiveness of an antiharassment policy defeats an employer's affirmative defense, as we have already noted, a policy's ineffectiveness alone cannot demonstrate the lack of good faith required for justifying an award of punitive damages. If it could, employers with antiharassment policies who failed on their affirmative defenses would automatically be exposed to punitive damages, and there would have been no need for the Kolstad Court to formulate the additional "good-faith efforts" inquiry.

Having examined the record, we can find no evidence demonstrating BFI's malice or reckless indifference -- its lack of good faith -- except for the simple assertion by the plaintiffs that its policy proved ineffective with respect to them. Because

evidence of ineffectiveness, without more, fails to support an award of punitive damages, we reverse that aspect of the judgment.

IV

BFI argues that it should be granted a new trial because the district court committed error during jury selection.  It contends that the district court erred in refusing, because of a discriminatory purpose, to let it exercise a peremptory strike against juror 18, a black female, and that its objection to the plaintiffs' peremptory strike of juror 24, a white man, was improperly overruled.

The applicable principles are well established.  A party can object to an opposing party's peremptory strike if the objecting party believes that the peremptory challenge was exercised for a racially discriminatory reason.  The court can sustain the objection if the objecting party has made out a prima facie case of discrimination and if the party exercising the peremptory challenge fails to provide a genuine and race-neutral reason for exercising the strike.  See Miller-El v. Cockrell, 537 U.S. 322 (2003); Purkett v. Elem, 514 U.S. 765 (1995).  A district court's rulings relating to peremptory challenges are given deference as its factual findings are reviewed for clear error.  See Jones v. Plaster, 57 F.3d 417, 421 (4th Cir. 1995).

In this case when the court asked BFI for its reason for striking juror 18, BFI's counsel provided the explanation that the

-9-

juror was a member of a union and worked for U.S. Airways, which BFI's counsel claimed "has had a history of employee problems." The court found this to be pretextual because U.S. Airways was completely unrelated to the case and because juror 18's testimony about her union membership permits no justifiable inference about her union sympathies. BFI's explanations also revealed some inconsistency when they were repeated. While the district court's findings may have been too sensitive, the court was in the best position to assess BFI's genuineness, and we are not in a position to second-guess its judgment when there is a basis, albeit weak, for the judgment.

With respect to juror 24, the district court determined that the plaintiffs' race-neutral explanation for the strike, i.e., that the juror was an older person, was not pretextual. As to that, we also defer.

V

In ruling on BFI's motion for a new trial, the district court appeared to apply a standard that the evidence must be taken "in the light most favorable to the Plaintiffs because they are the nonmoving party." Of course, that is the standard for ruling on a motion for judgment as a matter of law, not a motion for a new trial. The district court was required to evaluate BFI's motion for a new trial by determining whether the jury verdict was against the clear weight of the evidence and resulted in a

miscarriage of justice.  See <u>Wyatt v. Interstate & Ocean Transport</u>
<u>Co.</u>, 623 F.2d 888, 891-92 (4th Cir. 1980).

While the district court did recite the incorrect standard,
it also acknowledged its obligation to "weigh[] the evidence and
assess[] witness credibility" in order to determine whether the
jury verdict contradicts the clear weight of evidence or results
in a miscarriage of justice.  In addition, there is no other
indication in the record that the district court actually applied
the wrong standard and evaluated the evidence in the plaintiffs'
favor.  To the contrary, the district court properly analyzed the
weight of the evidence and found the jury verdict was supported by
substantial evidence.  Accordingly, we conclude that the court's
mere invocation of the improper standard did not materialize to
cause the defendants prejudice.

VI

In sum, we reverse the judgment of the district court insofar
as it awards the plaintiffs punitive damages, and in all other
respects we affirm.  We remand the case to the district court with
instructions to enter a judgment consistent with this opinion.

<u>AFFIRMED IN PART, REVERSED IN PART,</u>
<u>AND REMANDED WITH INSTRUCTIONS</u>

-11-